

SEALED

Office of the United States Attorney
District of Nevada
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

1  DANIEL G. BOGDEN
   United States Attorney

2  LISA CARTER-GIROUX
   Assistant United States Attorney

3  333 Las Vegas Blvd., Suite 5000
   Las Vegas, Nevada 89101

4  Telephone: (702) 388-6179

2014 JUL 24  PM 4: 29



BY_____


5
6
## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### -oOo-

7

8  UNITED STATES OF AMERICA,

   Plaintiff

9  vs.

10 TYRAL EDWARD KING,

11    Defendant

12

13

**Magistrate No.:**   2:14-mj-488-GWF

**CRIMINAL COMPLAINT**

VIOLATION:

Title 18, United States Codes, Section 2422 (b)
– Coercion and enticement
Title 18, United States Codes, Section 2423(a)
– Transportation of Minors for Prostitution

14        BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned

15 complainant, being duly sworn, deposes and states:

16                                    **COUNT ONE**
                                (Coercion and enticement)

17        On or about May 22, 2014, in the state and federal District of Nevada, TYRAL EDWARD

18 KING, defendant herein, did knowingly persuade, induce, entice and coerce an individual who had

19 not yet attained the age of 18 years, using any means of interstate and foreign commerce, to engage

20 in prostitution, all in violation of Title 18, United States Code, Section 2422(b).

21 ...

22 ...

23 ...

## COUNT TWO
(Transportation of minors)

On or about May 22, 2014, in the state and Federal Judicial District of Nevada, TYRAL EDWARD KING, defendant herein, did knowingly transport an individual who had not yet attained the age of 18 years in age in interstate commerce, to wit: from Las Vegas, Nevada to in and around Los Angeles, California with the intent that the individual engage in prostitution, all in violation of Title 18, United States Code, Section 2423 (a)

Complainant, Richard W. Leung, as a Special Deputy-US Marshal with the Federal Bureau of Investigation (FBI), states the following as and for probable cause:

1.       Your Complainant is a Special Deputy-US Marshal with the Federal Bureau of Investigation and a Detective with the Las Vegas Metropolitan Police Department (LVMPD). I have been employed by LVMPD for over nine years. Currently, Complainant is assigned to the Las Vegas Field Office and is a member of the FBI's Child Exploitation Task Force which primarily investigates children being commercially sex trafficked, which is prohibited under Title 18, United States Code, Section 2422 (b) – Coercion and Enticement, and Title 18, United States Code, Section 2423 (a) – Transportation of a Minor with Intent to Engage in Criminal Sexual Activity.

2.       The information used to support this Complaint was derived from reports of information obtained from eyewitnesses to the offenses described herein as well as investigations conducted by law enforcement related to the incident. This Complaint contains information necessary to support probable cause to believe that the criminal offenses described herein were committed by the defendant, TYRAL EDWARD KING, and is not intended to include each and every fact and matter observed by your complainant or known to the Government. Moreover, to the extent that this Complaint contains statements by witnesses, those statements are set forth only in part and in substance and are intended to accurately convey the information, but not to be verbatim recitations.

3.      Title 18, United States Code, Section 2422, coercion and enticement, provides in relevant part that "...Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not less than 10 years or for life."

4.      Title 18, United States Code, Section 2423, transportation of minors, provides in relevant part that "...A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life."

## FACTS ESTABLISHING PROBABLE CAUSE

5.      On or about June 24th, 2014, LVMPD Sergeant C. Peck received information from Clark County Probation Officer V. Ortega that a 15 year-old minor, identified hereinafter as Victim 1, may be involved in prostitution. Sergeant Peck relayed information to your complainant, Detective R. Leung. Your complainant is a member of the FBI's Child Exploitation Task Force which primarily investigates children being commercially sex trafficked. Your complainant first contacted Victim 1's mother via phone. VICTIM 1's mother stated she believed that VICTIM 1 may be involved in prostitution, and gave your complainant VICTIM 1's cell phone number. Your complainant conducted a record's check on VICTIM 1's phone number and recovered several prostitution advertisements. Your complainant responded to Clark County Juvenile Hall and interviewed VICTIM 1.

3

6.      Sometime in late April to early May 2014, VICTIM 1 met a 17 year old juvenile, hereinafter referred to as A.S., and TYRAL EDWARD KING through a friend in Las Vegas, NV. A.S. admitted to VICTIM 1 that she was a prostitute and that KING was her pimp. While in Las Vegas, A.S. spoke to VICTIM 1 several times about working as a prostitute.  VICTIM 1 declined to work in Las Vegas as a prostitute because she knew too many people in Las Vegas.  In late May 2014, A.S. and KING decided to go to Los Angeles, CA and A.S. asked VICTIM 1 if she wanted to go.  VICTIM 1 knew they were going to Los Angeles, CA for prostitution purposes. KING drove A.S. and VICTIM 1 to Southern California where they stayed at KING's grandmother's residence in the area of San Bernardino. The next day, KING drove VICTIM 1 and A.S. to Pomona, CA, and dropped VICTIM 1 and A.S. off in a busy grocery type parking lot. While in the car and in the presence of KING, A.S. gave several rules for VICTIM 1 to follow while prostituting. VICTIM 1 stated some rules were given in the car and some were given when they exited the car. VICTIM 1 remembered some of the rules to be:

- Ask if they are the police

- Ask screening questions to the client to include where they are from, type of employment etc.

- If VICTIM 1 comes in contact with another pimp to look down because another pimp can take her away if she doesn't.

- Never charge under $100.

7.      Based on your complainant's training and experience, pimps/human traffickers commonly designate a prostitute as the "second in command" of other prostitutes. In the pimp/prostitution subculture, this person is commonly referred to as the "bottom bitch" and is selected for a variety of reasons, such as that prostitute's earning potential, manipulating/teaching ability, seniority within the prostitution enterprise, or effectiveness at discipline.

8.     In addition, pimps/human traffickers, or designated "second in command"/trusted prostitute, commonly educate prostitutes in aspects of the sex industry, to include what acts to perform, how much to charge, and how to detect or avoid law enforcement.  This responsibility is often given to the "second in command"/trusted prostitute, as a way of shielding the pimps/human traffickers from prosecution.

9.     While in Pomona, CA, VICTIM 1 stated she conducted approximately three dates while walking the streets. VICTIM 1 stated she had sexual intercourse and masturbated prostitution clients and earned approximately $280. Dates are common street terminology for sexual conduct in exchange for money. VICTIM 1 stated KING drove them to all their "dates." VICTIM 1 stated that when she returned back to KING's vehicle, she kept her money in her purse. At first, VICTIM 1 refused to give any money to anyone and KING told VICTIM 1, "bitch there's no renegading out here." The term "renegading" is a common street terminology used in the prostitution subculture to refer to a prostitute working without a pimp. VICTIM 1 ultimately turned over all of the money she earned from prostitution.

10.    VICTIM 1 stated that the next day they drove to Los Angeles, CA where KING and A.S. posted Backpage prostitution advertisements of her and VICTIM 1 so they could engage in prostitution. Based on my training and experience, Backpage is a known website prostitutes and pimps commonly use to promote their illegal activities online. VICTIM 1 stated they used KING's cellular phone to post a Backpage advertisement for A.S., and A.S. used VICTIM 1's phone to post a Backpage advertisement for VICTIM 1.

11.    VICTIM 1 stated that they stayed in Los Angeles, CA at different hotel/motels for approximately four days. VICTIM 1 stated that the first day in Los Angeles, CA she caught approximately three "dates" she met through Backpage. VICTIM 1 stated that she earned approximately $200. VICTIM 1 stated that the second day in Los Angeles, CA she met a different

prostitution client early in the morning and masturbated him for $80. All money earned from prostitution acts were turned over.

12.     On May 22, 2014, Los Angeles Police Department (LAPD) Vice Officer Chavez #38128 called A.S.'s advertisement at 702-238-xxxx from Backpage Escort Advertisement under LAPD Event# 140522003677. That number was listed under Adult Escorts, specifically "Beautiful Lightskin Hot & Ready-19." The advertisement had a contact name of "Kelse." The pictures on the advertisement are that of A.S.. As Officer Chavez and A.S. began to converse via phone, they ultimately met up at the Vagabond Hotel located at 3101 South Figueroa Street Los Angeles, CA in an undercover operation room. When Officer Chavez and A.S. spoke in person, Officer Chavez agreed to pay A.S. $200 for sexual intercourse. A.S. was subsequently arrested for Prostitution. A.S. gave Officer Chavez a fictitious name of Hailee Morgan Dye, with a false DOB, and she was booked using the false information. VICTIM 1 also corroborated and stated A.S. was booked under that fictitious name.

13.     VICTIM 1 stated that they attempted to look for A.S. the next day because they hadn't heard from her, and came to the conclusion that she was arrested. VICTIM 1 stated KING panicked for a bit and began deleting his messages and gave orders to delete all of their messages. On May 24, 2014, KING set up a date for VICTIM 1 with one of A.S.'s prior prostitution client. KING wanted VICTIM 1 to go on this date to get money for A.S.'s bail. VICTIM 1 stated she had sex with that prostitution client for $1000 and instead of turning the money over, she hid the money. When VICTIM 1 returned to KING's vehicle, she claimed that the prostitution client did not have any more money because he had spent it all on A.S. KING appeared hesitant and asked VICTIM 1 if he can use her phone to check his Facebook. Instead of checking Facebook, KING began texting the prostitution client and pretended to be VICTIM 1 and asked if he had had a good time. KING realized that VICTIM 1 did in fact make money.  KING had VICTIM 1 exit the vehicle in a desert area and she was searched, but could not find the money on her person.  VICTIM 1 was left in the

6

1     desert area in Palmdale, CA where she contacted a friend's family member to assist her on getting to

2     a Greyhound Bus Stop. VICTIM 1 returned back to Las Vegas via Greyhound.

3           14.     VICTIM 1 gave your complainant consent to look through her cellular phone. Upon

4     recovering data, your complainant discovered several text messages between VICTIM 1 and "Ty"

5     with the phone number of 702-238-xxx1. A records check of the phone number 702-238-xxx1

6     revealed it was registered to TYRAL KING.

7           15.     Some of the text messages include:

8         •   On May 24, 2014 at 0314 hours KING sent: "This ty im deleting these messages but

9             you know yo time is money."

10        •   On May 24, 2014 at 0615 hours KING sent: "Jordyn you stupid you fucked up a

11             chance making some real money for 2 thousand dollars like lmao im glad you showed

            your true colors before I trusted with big money."

12           16.     Your complainant conducted a records check through Backpage.com. Your

13     complainant was able to recover the prostitution advertisement that VICTIM 1 stated A.S. and

14     KING had posted for her. In the records of Backpage.com, it revealed "TYRAL" with the address of

15     "921 Christopher View" was the person that created the advertisement. Backpage.com was also able

16     to recover numerous advertisements of A.S. created by "TYRAL." An LVMPD records check of

17     KING revealed he has a registered address of 921 Christopher View. Based on your complainant's

18     training and experience, Backpage.com charges a minimum fee for posting an escort advertisement

19     and that fee must be paid with a credit card.

20           17.     On July 8, 2014, your complainant conducted a records check of KING and

21     discovered he was arrested on July 7, 2014 by North Las Vegas Police Department for Burglary

22     related charges under Event # 140707-11738 and was booked in at Las Vegas City Jail located at

     3300 E. Stewart Ave Las Vegas, NV 89101. On July 9, 2014, your complainant responded to Las

23

Vegas City Detention Center and spoke to Las Vegas City Detention Sergeant Gierczic Badge# 427. Sergeant Gierczic showed me an inventory list of property belonging to TYRAL. In the inventory list, your complainant saw it listed a white Samsung Cell phone and a visa credit card along with miscellaneous clothing. It is believed the Samsung Cell phone and credit card were used in the crime of Coercion and Enticement and Transportation of Minors.

18.     Your complainant conducted a telephonic search warrant and the Las Vegas Justice Court Honorable Judge Hafen approved your complainant's seizing of the Samsung Cell phone and visa credit card. Your complainant responded to Las Vegas City Detention Center and served the search and seizure warrant. Your complainant seized one white Samsung cellular phone FCC ID# A3LSMG900P and one Visa Debit/Credit Card # ending in x8212 in the name of TYRAL KING. Both items were impounded into LVMPD Evidence. Further review of these items is pending.

## CONCLUSION

19.     Based on my training, experience and the totality of the facts related, your Complainant submits that there is probable cause to believe that TYRAL EDWARD KING, defendant herein, has violated Title 18, United States Codes, Section 2422 (b) – Coercion and Enticement, and Title 18, United States Codes, Section 2423(a) – Transportation of Minors for Prostitution.

_____
Richard W. Leung - Task Force Officer
Federal Bureau of Investigation/Las Vegas
Metropolitan Police Department

SUBSCRIBED and SWORN to before me
this 24th day of July, 2014

_____
UNITED STATES MAGISTRATE JUDGE

8